Case 04-31880    Filed 06/27/05    Doc 215



UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

FILED

05 JUN 27 PM 3: 47

EASTERN DIST. OF CA.
SACRAMENTO, CA.

In re:

ARNOLD C. TOSO and
GEORGETTE M. TOSO, dba
ARNOLD TOSO FARMS,

                    Debtor(s).

Case No. 04-31880-D-12L

D.C. No. CWC-8

Chapter 12.

Date:   May 19, 2005
Time:   1:30 p.m.
Place:  Hon. Thomas C. Holman
        Courtroom 34
        Sixth Floor
        United States Courthouse
        501 I Street
        Sacramento, CA 95814

## MEMORANDUM DECISION

This matter, the confirmation hearing on debtors' Chapter 12
Plan filed March 3, 2005, as subsequently modified (the "Plan"),
initially came on for hearing on May 3, 2005.  The only objection
to confirmation was filed by Bank of Stockton (the "Bank").  The
Chapter 12 trustee supports confirmation.  Neither the debtors,
nor the Chapter 12 trustee nor the Bank filed a separate
statement of disputed material fact under Local Bankruptcy Rule
9014-1(f)(1)(ii) and (iii).  Therefore, the debtors, the Chapter
12 trustee and the Bank consented to the resolution of the issues
pursuant to Fed.R.Civ.P. 43(e).

Nevertheless, the court continued the hearing to May 19,
2005 for an evidentiary hearing on two issues: (1) the
feasibility of the Plan, specifically whether the debtors have
arranged financing sufficient to allow them to farm their land

-1-

215

1  successfully, and (2) the adequacy under 11 U.S.C. §

2  1225(a)(5)(B)[1] of the interest rate proposed with respect to the

3  Class 2A claim held by objecting creditor Bank.

4      After the evidentiary hearing on May 19, 2005, the court

5  requested additional post-hearing briefing on one issue - the

6  Bank's claimed security interest the post-petition 2005 cherry

7  and walnut crops.  The matter was taken under advisement on June

8  7, 2005, the expiration of the time for filing the post-hearing

9  briefs.  This memorandum constitutes the court's findings and

10 conclusions pursuant to Bankruptcy Rules 9014(c) and 7052,

11 incorporating F.R.Civ.P. 52.

12     Because the confirmation criteria of section 1225 are nearly

13 identical to those of Section 1325, "case law interpreting

14 section 1325 will be relevant in interpreting section 1225." 8

15 Lawrence P. King, et al., Collier on Bankruptcy ¶ 1225.01 (15th

16 ed. 2005); In re Kjerulf, 82 B.R. 123, 126 (Bankr D. Or.

17 1987)(J.Perris)(citing legislative history that "[c]hapter 12 was

18 closely modeled after existing chapter 13, with alterations of

19 provisions that are inappropriate for family farmers.")

20     Except where a different burden has been allocated, e.g., on

21 the issue of the appropriate interest rate under 11 U.S.C. §

22 1325(a)(5), the debtors bear the burden of establishing that the

23 requirements for confirmation are met.  In re Buckingham, 197

24 B.R. 97, 102-103 (Bankr. D.Mont. 1996); In re Garako Farms, Inc.,

25 ─────────────────────

26 [1] Unless otherwise noted, all statutory references are to the
   Bankruptcy Code, 11 U.S.C. §101 et seq., and all "Rule"

27 references are to the Federal Rules of Bankruptcy Procedure.

28                            -2-

98 B.R. 506, 509 (Bankr. E.D.Cal. 1988).

The Bank makes the following objections:

1. "[T]he Plan is unclear...whether the debtors are committing all of their net disposable income to fund the Plan or whether they are limiting their contribution to the projected 'margin' set forth on Exhibit '1' to the Plan."  The Bank cites no authority for this objection, but the court interprets it as an objection under Section 1225(b).  Under the Plan, a portion of Claim No. 7 and all of Claim No. 6 filed by the Bank are treated as unsecured.  Thus, the Bank is the holder of unsecured claims in Class 6 under the Plan and has standing to raise a Section 1225(b) objection.  The Bank contends that, if it objects on this basis, as it has, then the Plan cannot be confirmed unless it either (A) provides for payment in full of the Bank's unsecured claims, or (B) requires the debtors to devote all of their actual disposable income, whatever it may turn out to be, to the plan for at least thirty-six months.  The Bank has not challenged the projections filed March 3, 2005 as Exhibits 1 and 2 in support of the Plan.  This objection is overruled.  Section 1225(b) is satisfied if the Plan requires debtors to devote all of their _projected_ disposable income to the Plan for a three year period (or longer if necessary).  Anderson v. Satterlee (In re Anderson), 21 F.3d 355 (9th Cir. 1994) (interpreting Section 1325(b)).  The debtors have met this requirement.

2. "[T]he Plan is unclear...whether debtors remain obligated to perform their obligations under existing Bank loan

-3-

1  documentation to the extent such documentation requires that the

2  Debtors protect, preserve and insure the collateral which secures

3  repayment of the Bank debt."  The Bank has not provided any

4  authority in support of this objection.  The objection is

5  overruled.  The Plan requires post-petition compliance with the

6  Bank's loan documentation, except as modified by the Plan. (p. 2,

7  lines 23-26).  The Plan does not alter the debtors' obligations

8  to protect preserve and insure Bank's collateral as required by

9  the loan documentation.  Therefore, the obligations remain in

10 force post-confirmation.

11      3. The Plan treats the Bank's Class 2B claim as unsecured,

12 notwithstanding the Bank's claimed lien on and/or security

13 interest in the Debtors' 2005 cherry and walnut crops.  This

14 objection is sustained.  This objection was the subject of post-

15 hearing briefing.  The court takes judicial notice of the fact

16 that cherries and walnuts grow on trees that produce commercial

17 crops over a period of years.  The cherry and walnut trees on the

18 debtors' real property commonly known as 14860 East Baker Road,

19 Linden, CA (the "Real Property") were planted before July 19,

20 2004, the date of the bankruptcy filing.  No evidence was

21 submitted as to the remaining useful commercial life of debtors'

22 cherry and walnut trees.  The first maternal blossoms for neither

23 the 2005 cherry crop nor the 2005 walnut crop had appeared by

24 July 19, 2004.  Nevertheless, trees are fixtures [Cal. Comm. Code

25 § 9102(a)(41)(West 2002 & Supp. 2005) and Cal. Civil Code § 660

26 (West 1982 & Supp 2005)], and they are therefore part of the

27

28                              -4-

1   Bank's collateral under its deed of trust (the "Deed of Trust")

2   on the Real Property recorded July 19, 2002.  A copy of the Deed

3   of Trust is attached to Claim No. 7.  The post-petition 2005

4   cherry and walnut crops, even though the first maternal blossoms

5   had not yet appeared at the time of the bankruptcy filing, are

6   "other rights, royalties and profits relating to the real

7   property," as that phrase is used in the Deed of Trust.  In

8   addition, the post-petition 2005 cherry and walnut crops, even

9   though the first maternal blossoms had not yet appeared at the

10  time of the bankruptcy filing, are crops as defined in the

11  Agricultural Security Agreement dated June 15, 2003 (the

12  "Security Agreement").  A copy of the Security Agreement is

13  attached to Claim No. 6.  In re Dettman, 84 B.R. 662 (9th Cir.

14  BAP 1988); In re Beck, 61 B.R. 671 (Bankr. D.Neb. 1985).  The

15  Bank's security interest in crops includes rights in proceeds of

16  the crops.  Cal. Comm. Code §§ 9203(f) and 9315 (West 2002 &

17  Supp. 2005).  Under 11 U.S.C. § 552(b)(1), the Bank's lien under

18  the Deed of Trust and security interest under the Security

19  Agreement extend to all collateral acquired by the debtors prior

20  to the bankruptcy filing and to all proceeds, product, offspring,

21  or profits acquired by the estate after the commencement of the

22  case, "except to the extent that the court, after notice and a

23  hearing and based on the equities of the case, orders otherwise."

24  The debtors presented no evidence sufficient to support an order

25  that the Bank's lien and/or security interest should not, based

26  on the equities of the case, extend to post-petition cherry and

27

28                                  -5-

1  walnut crops produced by the existing trees.  The court's ruling

2  on this objection is made without prejudice to the debtors'

3  ability to bring further proceedings to attempt to show such

4  equities under Section 552(b), or to attempt to surcharge the

5  Bank's collateral under Section 506(c) or to assert other rights.

6      4. The Plan is not feasible because the debtors failed to

7  provide information regarding any potential financing commitment

8  for future horticultural expenses.  This objection was a subject

9  of the evidentiary hearing on May 19, 2005.  At that hearing, the

10  debtors provided testimony showing the existence of unsecured

11  financing arrangements to provide for operational expenses.  This

12  objection is therefore overruled.

13      5. The Plan is not feasible as debtors have not proven the

14  ability to sell the property.  This objection is overruled.  The

15  debtors propose to sell the subject property within 120 days for

16  at least the July 1, 2004 appraised value.  The court takes

17  judicial notice pursuant to Federal Rule of Evidence 201 of the

18  fact that real estate values in the Central Valley have been

19  rising since July 1, 2004, and continue to rise.  The debtors'

20  proposal for sale is therefore feasible.  Alternatively, even if

21  the proposal for sale were not feasible, the feasibility

22  requirement of 11 U.S.C. § 1225(a)(6) relates to the debtors'

23  ability to make "all payments under the plan and to comply with

24  the plan."  Since the Plan calls for either sale within 120 days

25  or abandonment, the Plan is feasible.

26      6. The Plan provides for no payments to the Bank within the

27

28                                       -6-

120 day marketing period for the Real Property.  In their First

Amended Chapter 12 Plan filed May 31, 2005, the debtors have

inserted a provision for the monthly payment to the Bank of

interest at the rate of 6% per annum during the 120 day marketing

period.  Therefore, this objection is overruled as moot.

7. The plan does not permit Bank to record a notice of

default unless and until the real property is surrendered after

the 120-day period under which debtors could sell the property.

The objection is overruled.  The Bank may not like this

provision, but the Bank has provided no authority that this

objection prevents confirmation under 11 U.S.C. § 1225(a).

8. The plan is not proposed in good faith as it is proposed

solely for the benefit of debtors' daughter.  The objection is

overruled. The Bank has provided no evidence to support this

objection other than the unsworn statements in the objection (1)

that "the Bank has previously been advised through counsel that

the Debtors anticipated selling the Property to their daughter

Lisa" (page 4, lines 4-5), and (2) that "if the sole purpose of

the plan is to delay for an additional 120 days the date by which

Lisa must come up with the purchase price with no additional sum

for payment of interest, then the plan is not proposed in good

faith as it is proposed primarily to benefit a person other than

the debtors."  The court finds on the totality of the

circumstances and on the record before the court that the Plan

and the debtors proposal of the Plan are consistent with the

purposes of the Bankruptcy Code for the financial rehabilitation

of family farmers and that the Plan has not been proposed

primarily for the benefit of someone other than the debtors.  The

court therefore finds that the Plan has been proposed in good

faith and not by any means forbidden by law.

9. The Plan is not feasible because the Bank is entitled to

an equitable lien on the cherry crop.  The objection is

overruled.  The court has sustained the Bank's objection based on

its claim of a lien on and/or security interest in the 2005

cherry crop.  Furthermore, the Bank has provided no evidence

(other than the assertion of the objection) or authority showing

that it is entitled to an equitable lien on the 2005 cherry crop.

10. The Plan is not feasible because the Bank is entitled to

an equitable lien on the walnut crop.  The objection is

overruled.  The court has sustained the Bank's objection based on

its claim of a lien on and/or security interest in the 2005

walnut crop.  Furthermore, the Bank has provided no evidence

(other than the assertion of the objection) or authority showing

that it is entitled to an equitable lien on the 2005 walnut crop.

11.  The Plan violates the best interests of creditors test

set forth in 11 U.S.C. § 1225(a)(4).  The objection is overruled.

The Bank does not dispute the asset values.  The debtors intend

to collect the receivable described in the objection.  The

debtors have shown that the liquidation test is met.

12. The Plan does not provide an adequate interest rate on

the Bank's Class 2A claim.  This issue was a subject of the

evidentiary hearing on May 19, 2005.  No evidence on the

-8-

appropriate interest rate was submitted by the debtors or the
Bank.  A secured claim is only entitled under 11 U.S.C. §
1225(a)(5)(B)(ii) to interest at a rate sufficient to meet the
present value criteria set forth in that section.  Debtors
propose to pay creditor's Class 2A claim interest of 6% until the
property is sold or surrendered.  The burden of proving the
appropriate rate belongs to creditor.  <u>Till, et ux. v. SCS Credit</u>
<u>Corporation</u>, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787
(2004).  The rate starts at prime and is adjusted upward by an
appropriate risk factor.  The court takes judicial notice
pursuant to Federal Rule of Evidence 201 that the prime rate on
the date of the evidentiary hearing, May 19, 2005, was 6.0% as
reported by the Federal Reserve System.  See
<u>http://www.federalreserve.gov/releases/h15/update/</u>.  The court
further takes judicial notice of the fact that the prime rate
remains 6% as of the date of this ruling. The debtors have
included a risk adjustment of 0%.  The Bank has failed to carry
its burden of showing that any risk adjustment is necessary, and
the Bank has therefore failed to carry its burden of showing that
the debtors' proposed rate is insufficient.  Therefore, this
objection is overruled.

Because the court has sustained the Bank's objection
regarding the elimination of its lien on and/or security interest
in the 2005 cherry and walnut crops, the debtors have failed to
carry their burden of showing compliance with all of the
requirements of 11 U.S.C. § 1225(a), specifically 11 U.S.C. §

-9-

1225(a)(5).    Therefore, confirmation is denied without prejudice

to the debtors' ability to bring further proceedings to address

that objection.    The court will issue a separate order.

Dated:   JUN 27 2005

_____
United States Bankruptcy Judge

-10-

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

**Attorney for Debtor**
CARL W. COLLINS, ESQ.
ATTORNEY AT LAW
1127-12TH STREET, SUITE 202
P.O. BOX 3291
MODESTO, CA 95353

**Bankruptcy Trustee**
LAWRENCE J. LOHEIT
TRUSTEE
P.O. BOX 2889
SACRAMENTO, CA 95812

OFFICE OF THE U.S. TRUSTEE
501 "I" STREET, SUITE 7-500
SACRAMENTO, CA 95814

**Debtor**
ARNOLD CHARLES TOSO
GEORGETTE MARIE TOSO
5030 WILD GRAPE DRIVE
STOCKTON, CA 95212

**Request for Special Notice**
WILLIAM C. LEWIS, ESQ.
LAW OFFICES OF WILLIAM C. LEWIS
510 WAVERLEY STREET
PALO ALTO, CA 94301-2009

DATED: 6/28/05

By: _____
Deputy Clerk
Susan Wolny

EDC 3-070 (New 4/21/00)